*[Counsel listed in signature block]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLUMINA, INC.,<br><br>        Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>NATERA, INC.,<br><br>        Defendant/Counterclaim-Plaintiff. | CASE NO. 3:18-CV-01662-SI<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>CMC Date:  February 22, 2019<br>Time:        3:00 p.m.<br><br>**JUDGE:   HON. SUSAN ILLSTON** |

Pursuant to Northern District of California Civil Local Rule 16-10, plaintiff/counterclaim-defendant Illumina, Inc. ("Illumina") and defendant/counterclaim-plaintiff Natera, Inc. ("Natera") (collectively, the "Parties") jointly submit this Case Management Conference Statement in advance of the Case Management Conference scheduled for **February 22, 2019 at 3:00 p.m.**, Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California.

**I.   CASE STATUS**

### A.   Brief Description of the Claims and Defenses Asserted in the Action:

*U.S. Patent No. 9,493,831:* Illumina brought this action against Natera, accusing Natera's Panorama Prenatal Test of infringing U.S. Patent No. 9,493,831 (the "'831 Patent"), entitled "Methods of Fetal Abnormality Detection." *See* Dkt. No. 1. Natera's Panorama product is a prenatal test based on the use of cell free fetal DNA that tests for fetal genetic disorders. *See id.* Illumina contends that Natera's infringement has been willful and seeks all available remedies, including damages and a permanent injunction. *See id.*

Natera denies that any of its accused products, including its Panorama prenatal test, infringe the asserted claims of Illumina's '831 Patent. *See* Dkt. No. 61. Natera has asserted counterclaims of non-infringement and invalidity, as well as affirmative defenses, including that the asserted claims are invalid and/or unenforceable for one or more reasons, including for failure to meet one or more of the requirements under 35 U.S.C. §101 *et seq.*, including but not limited to §§ 102, 103, and 112. *See id.* Natera contends that it has not willfully infringed, and does not willfully infringe, the asserted claims. *See id.* Natera also contends that Illumina's claims are barred or limited under principles of equity. *See id.* Finally, Natera contends that Illumina is not entitled to any damages or injunctive relief. *See id.*

*U.S. Patent No. 8,682,592:* Natera filed a counterclaim against Illumina, accusing Illumina's Verifi®, Verifi® Plus, VeriSeq™ PGS, VeriSeq™ NIPT of infringing U.S. Patent No. 8,682,592 (the "'592 Patent"), entitled "System and Method for Cleaning Noisy Genetic Data from Target Individuals Using Genetic Data from Genetically Related Individuals." *See* Dkt. No. 61. Illumina's Verifi® and VeriSeq™ products test for chromosomal abnormalities, such as aneuploidy, using

genetic material collected from a single cell or cells from an embryonic biopsy or cell free fetal DNA found in maternal blood. Natera asserts that Illumina's infringement has been willful and deliberate, and seeks all available remedies, including damages and a permanent injunction. *See id.*

Illumina denies that any of its accused products, including its Verifi® and VeriSeq™ products, infringe the asserted claims of Natera's '592 Patent. *See* Dkt. 63. Illumina asserts that it has not infringed and is not infringing, directly, indirectly, contributorily, by inducement, or in any other manner, either literally or by the doctrine of equivalents. *See id.* Illumina has also asserted various defenses, including that the '592 patent is invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112. *See id.* Finally, Illumina asserts that Natera may not claim or recover any relief. *See id.*

### B.  Key Events Since The Initial Case Management Conference:

Key events since the initial case management conference are as follows:

- The Court denied without prejudice to renew on a fuller factual record, Natera's Motion to Dismiss Illumina's Complaint on the basis that the '831 Patent comprises patent-ineligible subject matter (35 U.S.C. §101). *See* Dkt. No. 41.

- The Court also denied Natera's request to limit the proceedings to the question of whether the '831 Patent includes an inventive concept sufficient for patent eligibility under 35 U.S.C. § 101, holding that economies in discovery were speculative and an overlap in issues diminishes the possible benefits of bifurcation. *See* Dkt. No. 53.

- Natera filed a petition for *inter partes* review of the asserted claims of the '831 Patent. *See Natera, Inc., v, Illumina, Inc.*, No. IPR2018-01317, Paper No. 1 (P.T.A.B. June 29, 2018). On January 19, 2019, the Patent Trial and Appeal Board declined to institute *inter partes* review on the asserted claims of the '831 Patent. *See Natera, Inc, v, Illumina, Inc.*, No. IPR2018-01317, Paper No. 15 (P.T.A.B. Jan. 19, 2019).

- The Parties submitted claim construction briefing requesting that the Court to construe one term in the '831 Patent and two terms in the '592 Patent. *See* Dkt. Nos. 69-76. On January 30, 2019, the Court issued its Claim Construction Order construing the three terms at issue. *See* Dkt. No. 81.

### C.  Alternative Dispute Resolution:

The Parties are open to exploring alternative dispute resolution, such as mediation, as a means

to possibly resolving the Parties' disputes.

## II. CASE MANAGEMENT ISSUES

### 1. Infringement of the '592 Patent

**Illumina's Position.** Illumina believes that in view of the Court's claim construction order any further allegations by Natera that Illumina's non-invasive prenatal testing ("NIPT") products infringe the '592 patent would be frivolous. In its claim construction order, the Court ruled that "both the claims and specification [of the '592 Patent] demonstrate that the claimed method is directed to the analysis of samples containing the DNA of only one individual." Dkt. No. 81 at 15. The accused Illumina NIPT products, however, analyze samples containing DNA not just from one individual, but the DNA of both the mother and fetus. Although Natera attempts to salvage its non-infringement case below, Natera is advancing a meritless theory relating to "individually measuring" that is simply wrong on the facts. In all of Illumina's NIPT products, fetal DNA and maternal DNA are measured *at the same time* on the Illumina flow cell. There is never any isolation of fetal DNA from maternal DNA and no distinction between fetal and maternal DNA. Accordingly, to the extent Natera continues to pursue infringement claims against the Illumina NIPT products, this case is plainly exceptional pursuant to 35 U.S.C. § 285.[1]

**Natera's Position.** Natera disputes Illumina's assertion regarding the effect of the Court's claim construction order and notes that Illumina's current position conflicts with its argument during claim construction. Indeed, Illumina's position regarding the Court's construction is inconsistent with arguments Illumina advanced in support of its proposed construction, which the court adopted. For example, Illumina urged that it "is not arguing that the method cannot be applied to multiple individuals." Dkt. 74 at 16. Illumina framed its argument as "the claims require that, for each 'individual' that is assessed, the claims are limited to measuring the data of that 'individual' separately from the data of any other individual." *Id.* As explained below, Illumina's accused

---

[1] Below, Natera further states that it "renews its request to focus the proceedings on the patent ineligibility of the subject matter claimed in the '831 Patent." Yet, Natera has not taken any discovery or identified any facts that would warrant this. If anything, the PTAB's denial of Natera's IPR request on the '831 Patent confirms that the claims of the '831 Patent include an inventive concept such that they are eligible under § 101.

products do just that—measure the DNA of the individual separately.

The Court construed "at least 100 loci on the chromosome or chromosome segment of interest in the individual" to mean: "at least 100 loci on the chromosome or chromosome segment of interest from only the individual." Dkt. 81 at 15. Illumina's accused NIPT products satisfy the claimed limitation, as construed, because during sequencing, the DNA fragments are individually measured. For example, during sequencing, only a single DNA fragment is able to bind to the DNA probes within one nanowell of the flow cell such that only one DNA fragment is in one nanowell; that DNA fragment is clonally amplified to form a cluster within that well. Each cluster is then sequenced on Illumina's sequencing instrument to generate "genetic data" on a given locus. Thus, DNA fragments "from only the individual" (*i.e.*, the fetus) are clonally amplified and sequenced, separately from other DNA fragments, to generate "genetic data for some or all possible alleles at a plurality of at least 100 loci" on the chromosome of the individual. Indeed, Illumina literature indicates that in its NIPT analysis, Illumina targets fetal cell-free DNA fragments:

> Studies have shown that in a maternal sample, shorter cfDNA fragments tend to be fetal in origin while longer fragments tend to be maternal (Figure 1). Using paired-end sequencing, the VeriSeq NIPT solution can improve the signal-to-noise ratio by selecting shorter fragments and make highly accurate calls using as little as one-third the read depth of other sequencing assays. *See* https://www.illumina.com
> */content/dam/illumina-marketing/documents/products/brochures/veriseq-nipt-solution-a4-brochure.pdf.* (last visited on February 19, 2019).

Even before the Court issued its claim construction order, Natera specifically sought discovery, by way of interrogatories and requests for production, from Illumina regarding how it performs high-throughput DNA sequencing to measure genetic material, including its "allele-specific amplification" techniques. In response to Natera's repeated demands that Illumina produce such information, among other information, Illumina has delayed its production of such information. Illumina's efforts to avoid discovery in this case should not be rewarded.[2]

Moreover, Illumina does not dispute that, in addition to accusing Illumina's NIPT products of infringement, Natera also asserts that Illumina's PGS (preimplantation genetic screening) tests

---

[2] Natera intends to seek leave to amend its infringement contentions as to this claim construction issue.

also infringe. To the extent Illumina argues that the Court's claim construction gives rise to non-infringement arguments concerning its NIPT products, those arguments do not apply to Illumina's PGS products.  Thus, discovery will necessarily proceed regarding the technical details of Illumina's PGS products, revenue associated with those products, and Illumina's contentions that the '592 Patent is invalid.  It cannot, therefore, be said that bifurcating and focusing the proceedings with respect to Illumina's NIPT products will lead to economy, nor will it lead to a ruling that would be dispositive of all issues associated with the '592 Patent such that trial would not be necessary.  *See* Illumina's Opposition to Natera's Motion to Stay or, in the Alternative, to Limit Proceedings, Dkt. No. 49 at 12-13.

Finally, to the extent the Court seeks ways to narrow the case, Natera renews its request to focus the proceedings on the patent ineligibility of the subject matter claimed in the '831 Patent. More specifically, the Court has already found "that the '831 is directed towards patent-ineligible subject matter." Dkt. No. 41 at 6.  The Court, however, found that "the factual record [was] not sufficient for the Court to conclude whether there is an inventive concept." *Id.* at 7.  Unlike Illumina's request to expedite consideration of summary judgment regarding just a portion of the Illumina products accused of infringing '592 Patent, a determination of ineligibility of the '831 Patent would have the effect of eliminating entirely further proceedings regarding that patent. Additionally, now that claim construction has concluded, there is no longer a risk of duplicative claim construction efforts.  In fact, Natera believes that the positions Illumina took during the claim construction, and the Court's claim construction ruling "that the '831 patent is directed toward aneuploidy detection" (Dkt. No. 81 at 9) supports Natera's assertion that the claims of the '831 Patent simply recite well-understood, routine, and conventional activities that are not sufficient to transform the ineligible concept covered by the claims into patent-eligible subject matter.[3]

2. **Case Schedule**

---

[3] Contrary to Illumina's assertion, patent eligibility under 35 U.S.C. § 101 was not at issue in the IPR.  Nor could it have been.  35 U.S.C. § 311 limits IPRs to "ground[s] that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."

The Parties respectfully request that the Court enter the following schedule for completion of this matter:

| Event/Local Rule | Proposed Date |
|---|---|
| Close of Fact Discovery | August 9, 2019 |
| Opening expert reports for which party bears the burden | August 23, 2019 |
| Rebuttal expert reports | September 20, 2019 |
| Close of Expert Discovery | October 11, 2019 |
| Deadline for Dispositive Motions | October 18, 2019 |
| Dispositive Motion Opposition Briefs [Civil L.R. 7-3(a)] | November 1, 2019 |
| Dispositive Motion Reply Briefs [Civil L.R. 7-3(a)] | November 8, 2019 |
| Dispositive Motion Hearing [Civil L.R. 7-2] | November 22, 2019 |
| Last day to file Joint Pretrial Conference Statement, trial witness list and summary of proposed testimony, deposition and written discovery designations, jury instructions, admissibility stipulations, motions in limine, and trial exhibits/objections [Judge Illston's Pretrial Instruction Nos. 1, 2, 3, | January 13, 2020 |

| Event/Local Rule | Proposed Date |
| --- | --- |
| 5(b), 6] | |
| Last day to file responses to motions in limine [Judge Illston's Pretrial Instruction No. 6] | January 27, 2020 |
| Pretrial Conference | February 3, 2020 |
| Trial (2 weeks) | February 10-21, 2020 |

| | | |
|---|---|---|
| 1 | Dated:  February 19, 2019 | Respectfully submitted, |
| 2 | | WEIL GOTSHAL & MANGES LLP |
| 3 | | |
| 4 | | By:    /s/ Edward R. Reines |
| 5 | | Edward R. Reines (Bar No. 135960)<br>edward.reines@weil.com |
| 6 | | Derek C. Walter (Bar No. 246322)<br>derek.walter@weil.com |
| 7 | | WEIL GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway |
| 8 | | Redwood Shores, CA 94065<br>Telephone: 650.802.3000 |
| 9 | | Fax: 650.802.3100 |
| 10 | | *Attorneys for Plaintiff/Counterclaim-Defendant* |
| 11 | | *ILLUMINA, INC.* |
| 12 | Dated: February 19, 2019 | GIBSON, DUNN & CRUTCHER LLP |
| 13 | | |
| 14 | | By:    /s/ Tracey B. Davies |
| | | Tracey B. Davies (pro hac vice) |
| 15 | | tdavies@gibsondunn.com |
| 16 | | Mark N. Reiter (*pro hac vice*)<br>mreiter@gibsondunn.com |
| 17 | | GIBSON, DUNN & CRUTCHER LLP |
| 18 | | 2100 McKinney Avenue<br>Dallas, TX  75201-6912 |
| 19 | | Telephone: 214.698.3100<br>Fax: 214.571.2900 |
| 20 | | |
| 21 | | *Attorneys for Defendant/Counterclaim-Plaintiff* |
| 22 | | *NATERA, INC.* |

# **CERTIFICATION**

I, Derek C. Walter, am the ECF User whose identification and password are being used to file this Stipulation. In compliance with General Order 45.X.B, I hereby attest that Tracey B. Davies has concurred in this filing.

                                        */s/ Derek C. Walter*

                                        Derek C. Walter